Good morning, Your Honors. Barry Levy on behalf of Appellant Omega. We are appellant on both of the related appeals, and I would like to reserve approximately four minutes to close. Okay. All right. Watch the clock. Excuse me. Your Honors, I'd like to start by just sort of reminding the Court a little history. One moment, please. This Court, in its 2008 opinion reversing the District Court's summary judgment in favor of Costco on the first sale issue, which was subsequently affirmed by the Supreme Court, noted at that time that the basic facts of this case are undisputed. Number one, Omega manufactures and engraves on the underside of the Seamaster watch a U.S. copyrighted Omega Globe design. If the Court, anyone wishes to see it, I do have it here. Costco obtained the watches from the gray market without Omega's permission, and Omega filed this suit for copyright infringement in 2004, alleging that Costco's acquisition and sale of the watches constitutes copyright infringement under Sections 106.3, which is the exclusive right to distribute, and Section 602A, which is the importation section. Under 602A of the Copyright Act, importation into the United States without the authority of the copyright of a work acquired outside the United States is an infringement of the exclusive right to distribute copies. Omega's copyright in that Globe design has never been at issue in this case. After its first sale challenge to Omega's infringement action failed, Costco changed tactics and raised a new defense to infringement, a claim of copyright misuse, which is the claim we have in this appeal now. The District Court acknowledged at that time, in its order, that cases finding misuse had been limited to situations involving antitrust, tying arrangements, licensing situations. Nonetheless, the Court decided it would judicially expand the concept of misuse and apply it here. Why? Because the Court, and the Court was forthright about it, the Court didn't like what it believed was one of Omega's motives for having that copyrighted design and why it was engraved on the watch. And that was that it was one of its motives was that it allowed Omega to take advantage of the Copyright Act's limitations on importation, and it allows them to exercise their exclusive right to distribute before there has been a first sale. What is missing from the Court As I understand it, in purchase on the green market, there was a first sale, not in the United States, but you have distribution agreements with people, and you sold the watches to somebody pursuant to your distribution agreement. And Costco bought it. And Costco bought it from them. Right. There's no dispute about these Omega watches. They're genuine, they're genuine trademark law. Right. Well, you know, trademark law is not at issue in the case. I know, I know. But so that's one of the reasons why we're looking at is the misuse of the copyright law to do the same thing. Well, and I think that gets us to the heart of this case. And it's what is totally missing from the district court's order and opinion in this case. And that is the first thing the court has to do. The most important thing is to look at the plain language of the Copyright Act. And if you look at the district court's order, other than referencing that the case was involved, 602, the Importation Act, the court never addresses the key sections of the Act. Sections 101, 102, 106, 501. The court never references it, never looks, I'm sorry, never looks at those sections. And if we, if we look at those first of all, in 101, Congress defined copies as material objects in which a work is fixed and from which the work can be perceived either directly or with the aid of a machine. It then says that copies, the term copies includes the material object in which the work is fixed. It makes that clear because it explains that the work is created when it is fixed in a copy and it explains that a work is fixed in a tangible medium of expression when its embodiment in a copy is sufficiently permanent or stable to permit it to be perceived. Does anybody buy the artwork? Yes. I can't tell you yes and I can't tell you no. I can tell you that Omega believes that it's important to have, whether it's that global design or other designs on their watch, because it enhances the prestige. So you've always had like a Seahorse or some other watch, they only, Omega only started putting on this other global art when it was decided that would be potentially useful to restrict the importation of the product. Yes, that was a motive. It was not the only motive. And that motive is not an improper motive. Even the Supreme, because it's, it goes to the point of trying to effectuate counter-counterfeiting or other types of infringement to the copyright. Even in Kirtsang, the recent U.S. Supreme Court case, they pointed out that preventing piracy is one of the traditional purposes of the Copyright Act and you use your copy. Counsel, wouldn't the ordinary customer who bought it be unaware that that customer would be liable for infringement if he sold that watch? You're applying the copyright law to the watch that the ordinary customer buys with the little tiny little thing. Well, what we're applying is the Copyright Act says in 106.3, it says that the exclusive right to reproduce in copies and to distribute copies of the copyrighted work. But in section 102, the Act says copyright protection subsists in original works of authorship fixed in any tangible medium. So in other words, the question is, is this a copy and what does the Act permit to be done with that copy and what kind of exclusive rights does the copyright holder have? The Act says what is protectable, so you copyright a design, but until that design is fixed in a tangible object, whether that's a watch, it could be, I write in my mind the great American novel, but until I put that into a book, a tangible object, that's what is a copy. I can then protect that copy until there has been a first sale. Now, once there's been a first sale, then I can't exercise any further exclusive rights further distribution. So the first sale doctrine applies to copyrights as well as trademarks? Oh, yeah. I mean, the first sale doctrine was important here because Costco's first defense, first attack, and the reason we were here in 2008, was that there was a question about the application of the first sale defense. And the Supreme Court changed its mind? Well, first the Supreme Court affirmed this court's decision. It affirmed the reversal that this court ruled. We're quite aware of that, but then we're also aware of the later case where it changed its mind. It did. And that case, as even Costco in their 20HA letter to this court said, that case has no effect on this appeal. And it doesn't. In fact, that case has no effect on this issue, and it doesn't have any effect on the first sale issue in this dispute between Omega and Costco because under... It's the copyright use here. They could have taken another route after the Supreme Court case, but they chose to proceed with this theory. I would submit to the court, although it's not something that has been briefed here other than the 20HA letter that they submitted in our reply, there is authority in the United States Supreme Court, and it goes back to about 150 years ago, it started in the Durand case, that when the circuit court renders a judgment, and that is affirmed by a divided court, that is a conclusive and binding determination between those parties. That's another case. It's another case. Let's go back to that case. Absolutely. So conceptually, I understand what you're arguing strictly from the language of the Copyright Act. And as I understand the copyright misuse doctrine, there can be an infringement as you discuss, but the copyright misuse doctrine is an equitable defense to that infringement. So all you've established with your citation to the Copyright Act is that, okay, there's an infringement. But they're saying, okay, but we have an affirmative defense called copyright misuse, and that's because you're fixing that global artwork on a watch, which is for the sole reason of... No, it's not the sole reason. For a reason that's not appropriate, and also which doesn't further the purposes of the Copyright Act itself. But it does further the purposes of the Copyright Act because you look... Let's focus on the equitable nature of the defense. That's why these motive questions and other issues become important. Well, first of all, the test for misuse that has been applied by this circuit is an objective test. And it's the test that this circuit articulated in the Apple case and in the Napster case. And it's the test that you look at, is the copyright holder attempting to use its copyright to control something that is not protected... It's not its... Within the protection... It's outside the copyright. Purpose and policy of the copyright law. A copyright is only protectable, you can only protect it in a copy. Now, this is that unusual case. We're not talking about here... It's a definition of a copyright. That's a subject matter definition of a copyright. It will be a subject matter definition of a copyright. The exclusive right to distribute covers the design, the work of authorship, which is copyrightable, but until that is fixed in a material object, any material object, you can't control it. It's the exclusive right. So, for distribution of an original work of authorship cannot be protected under the Act unless it is fixed. It's that fixation requirement on a material object because it's only then that it becomes something, a copy, in which copyright protections subsist. So, what you're saying and what the district court and what Costco is really saying is, ha, gotcha. It's a gotcha defense because what they're saying, by fixing the design on a useful object, you were using your copyright to control the distribution of that useful object, which is not itself copyrightable. Therefore, you're misusing your copyright. Well, the answer is that's... Aren't you really undermining trademark law? If Omega can't get this kind of control via trademark law, why should it be able to get it by copyright? Well, I'm not sure whether they can or can't under trademark law. That hasn't been an issue in this case, and I honestly can't... All right. We put the trademark aside, but isn't that what is being attempted here? No. What's being attempted is they're using the law as written by Congress. And Congress itself, in the House report that's cited in the statute, says that you can do this because they say there's two essential elements. It's that original work and the tangible object. They must be merged through fixation in order to produce subject matter copyrightable under the statute, and then it's protected. So, Congress also warns the courts... That fixation, the whole fixation in a tangible medium goes to the line between ideas and works that are properly the subject matter of copyright. That's the whole reason that fixed in a tangible means of expression is in there, because copyright doesn't protect ideas. Right. But remember, we have never contended. We don't now, and we never have, that the watch itself was copyrightable. Yeah, and it's certainly not. Yes, and we're not contending that it is. But what is protected is we have the right to the exclusive right to distribute that copy, and it doesn't become a copy until you fix that design onto a material object, and it is not up to a court or a licensee or any, or the buyer to make the decisions about what is the quality, what is the artistic value. You can go back to Justice Holmes back in 1903 in the Bleistien case where he talked about it is not up to the courts. It's not something that those trained in the law should be doing, is making judgments on this. There is, they're looking at or, you know, what you're saying is looking at subjective motivation. Nowhere in the copyright law do you look to subjective motivation. Okay. Did you want to save four minutes because we're running out of time? I would like to. Also, does the court wish me to address the attorney's fee issues? If not, if you do, I will be happy to use it. Thank you, Your Honor. Thank you. May it please the Court, I'm Bruce Keller from Debevoise & Plimpton, and with my colleagues Aaron Moss and Norman Levine from Greenberg Lusker, we represent Costco, and we're asking today for you to do three things. And the first is affirm the judgment below, but we think, and it's the reason we sent the Rule 28J letter, that you can do so and actually should do so on the basis of curtsaying. It is not the case that the affirmance by the under any number of black letter rules, and the case law supporting that is actually cited in the party's Rule 28J letters. Now, we took Rule 28J very seriously, and we didn't argue in it, but only days after curtsaying came down, we brought it to your attention, and we didn't say it had nothing to do with this case. We said that the first sale issue per se is not an issue in this appeal, and that's correct. But curtsaying came down and said that the infringement claim that Omega has brought can no longer be brought against anybody, and that rule applies to all pending cases at the time, and at the very end of your 2008 decision. In this case, the words were, neither party has prevailed yet. We're sending it back down to the district court, reversed and remanded. It was a completely live case, and the problem with Mr. Durant's case is that it leaves judgment with reasoning. The judgment in a split Supreme Court 4-4 decision of the lower court, the Ninth Circuit in this case, is left undisturbed, but it says nothing about the rationale, and if you actually read the Durant case that he cited to you, that's the 1868 case, it says exactly that. It says we leave undisturbed the judgment below because we can't agree. But the judgment below in this prior 2008 opinion in this court was that it's reversed and remanded. It's a live controversy, and frankly, although I want to tell you all about misuse in a second, the most efficient use of judicial resources today is to affirm on the alternative grounds of curtsaying, and that's because were you even to disagree on misuse, and again, I'll explain why you shouldn't in a second, and you sent it back down to the district court. Summary judgment motion based on curtsaying, the district court has no latitude but to say the first sale doctrine, having been rewritten or re-explained, rethought by the Supreme Court, applies. It's a perfectly good defense. Omega can't sue Costco or anyone else in the country for importing genuine Costco watches from overseas. So the first thing we're going to do is we're going to take a look at that and then think about doing that. We would want briefing on that question. You know, I understand, and if that's what you decide to do, we're happy to provide it. Frankly, because we took Rule 28J seriously, we would not have been surprised had you asked for further briefing at that point, but you didn't. But actually, I'm suggesting that if you just read the cases cited by the parties, including the Durant case, it couldn't be any clearer that we're right. The Supreme Court's ruling exposes of this case the district court would have no discretion, even if you disagree with us on misuse. Well, then perhaps we should send it back to the district court to reconsider if it's so clear that, consider whether or not this is still a live case. I recognize that you certainly could do that. I'm suggesting that under the standards that apply to alternative grounds for affirmance, that would be wasteful because the result is preordained. And this is a record that is completely fully developed. As Mr. Levy said, there's no dispute as to what the facts are. This is an intervening Supreme Court decision that controls this case. You sit here with a developed record. You can apply it to this record and affirm on that basis that it's a classic case allowing you to affirm on alternative grounds. But I take your point, Your Honor. If you want additional briefing, we're happy to provide it. But frankly, we'll be back here again. How many times do you want to see us? Well, let's talk about the copyright misuse defense. So originally, the copyright misuse defense was restricted to concepts of antitrust law and monopoly. But it seems to have developed over time to include other types of misuse. What is the standard you're advocating for? What is a copyright misuse other than something that's a tie-in or some other form of antitrust violation? So I'm going to tell you what the standard is in one second, but I want to make this point first, which is that this is a classic anti-competitive use of copyright. And so it fits well within all of the hardcore misuse cases. But as we understand the standard, and we agree that the controlling cases are the Apple case and the Napster case, it's an instance when a copyright owner seeks to use the courts to extend copyright beyond its intended scope in ways that are unrelated to the purposes for which copyright is granted. And let's pause there for a second because, again, I don't think there's any dispute on this. The purposes for which copyright is granted, and we cited the Washingtonian case in our brief, is to encourage creation of expressive works for the benefit of the public, not to give the copyright owner, not to line their pockets. It's a means to an end. And when a copyright owner, the standard is when a copyright owner goes beyond that purpose. That's the violation of public policy that causes a court sitting in equity to say, we're not going to enforce the copyright in this case because it's counter to the public policy for which we granted you this exclusive limited monopoly. It's against public interest. They spent a lot of time in their brief saying that our public policy point was too amorphous to apply. It's not. It comes directly from this court. It comes directly from the Supreme Court, in the mother of all misuse cases, that's the Morton Salt case, where the court said it is against public policy to blur the lines between the protected and the unprotected. And with all respect, we have to disagree with Omega's position. They said that they weren't trying to get protection for an uncopyrightable article. That's exactly what they're trying to do. This is a watch. It may be an expensive watch, but it's just a watch. It's not protected by copyright. And turning it around and putting a tiny little symbol that is virtually invisible to the average eye, and if you look at page one of our brief, we reproduced it in its actual size in a much clearer sense than you see it on the watch because it's engraved and it blends in. We put it there in black and white for you. Using that tiny little symbol to try to stop the importation of genuine watches is exactly the type of leveraging that's at the heart of the misuse because it is an effort to leverage beyond what you're entitled to. Watches are not entitled to copyright protection, so that's your first misuse in the sense of tying or leveraging. But there's a second form here. Why did they do it? They did it, and this is not a subjective analysis, they did it to maintain their price. It sells for $19.99 or so at authorized retailers, and you can get the exact same watch, genuine watch, with a better guarantee for $12.99 at Costco. And Omega's retailers don't like it, and so it's an effort to leverage themselves into a price position. And what's really interesting, and the reason I said that one of the best cases is the Morton Salt case, the Supreme Court case from way back when they decided the salt pill issue. It cites a whole slew of cases towards the end of the opinion. It says the public policy that we're worried about protecting here, we don't want courts to be used to blur, is the expansion beyond what your limited grant gives you into other areas. And they cite another Supreme Court case as an example of where that happened. Interestingly enough, it's the Bob's Merrill case, which was a first sale case, the first first sale case. And why is Bob's Merrill relevant to us today? Because in Bob's Merrill, the publisher was slipping into its books that Macy's was selling, said you can't sell this book for less than a buck. It was a pure resale price maintenance operation. And the Supreme Court in Morton Salt said, when you're sitting in equity, and you see something like that going on, you don't enforce the patent, you don't enforce the copyright, because it's against public policy, and it's inequitable, and it deserves the public. So you trace the lineage from Bob's Merrill, to Morton Salt, to laser comb, and this court's adoption of laser comb. And what we've got here is twin leveraging, trying to protect a useful article for the purpose of resale price maintenance. That's the very heart of however you want to articulate the evolving misuse standard. And we acknowledge that it's still evolving, and we don't think that's a bad thing. But we're not asking you to go out on a limb. This case is at the core. This is actually the easy case, because of all of the undisputed facts in the record that show what was going on here. It's an effort to protect this useful article using copyright law. But counsel, your argument isn't predicated on the size of the protected element, is it? You're not saying because the protected element is extremely small, that precludes copyright protection, are you? No. That's not our position, because frankly, you can have copyright misuse in other circumstances. And why do I say that? I'm going back to Kurt Zang for a second. In Kurt Zang, although it was only a first sale case, the Supreme Court was very interested and actually very concerned about other instances of what it termed disruptive copyright infringement litigation. And it used the example of efforts to stop the microwaves. They have software in there to make them operate. That would be if somebody were suing over, it's not a size of the copyright, it's copyrighted work is there. But we don't think copyright infringement ought to be used to stop the sale of those sorts of articles. And then they went further to something I think is directly responsive to your question, Your Honor. They used the example of packaged goods. In the case of packaged goods, just as in the case we have, the copyrightable aspect of the design is the tail of the dog. It's the copyrightable tail that's wagging the useful article dog. And whether it's a watch or a package or a microwave with a microchip in it or an automobile, copyright is not supposed to be used in the service of disrupting the sales of those articles fairly purchased on the open market. Now, I want to wait back for a second to encourage you to think about Kurtzsang. One of the reasons affirming on Kurtzsang grounds is important. We're not going to have this type of case again. After the Supreme Court's ruling on Kurtzsang, these sorts of lawsuits have been severely restricted if not labeled dead on arrival, right? Because it's okay to import genuine goods from abroad. Whether it's a one-way trip or a round trip, as Justice Ginsburg said in her concurrence in the Quality King case, it doesn't matter. So the number of instances in which you're going to have a misuse defense asserted alongside of a first sale defense seems to be to be substantially reduced. So just to get it straight, if it's a first sale defense, then you're saying there's no infringement. But if it's a copyright misuse defense, then there's infringement that the courts are not going to enforce. That's conceptually correct. You stay your hand. If it looks like misuse, you simply don't enforce the copyright. And with all respect to Mr. Levy's argument, he was largely correct on all the basic elements of copyright law. But I think you put your finger on it kind of beside the point. You always satisfy those prima facie elements. That doesn't advance the analysis at all. It's only when you've satisfied those prima facie elements that you even get to the equitable defense of conceding his citations are accurate doesn't mean anything in terms of how you handled this case. Your issue on misuse today is whether or not you agree with our position, which is that, for the reasons I've explained, this is a core leveraging situation in two ways, trying to protect a useful article, trying to get resale price maintenance. But so the reason I don't know if I agree with you that these cases will go away is because you don't have to have a gray market, a product sold on the gray market in a foreign country to end up in a situation where there's infringement, but there's also the defense of copyright misuse. You're right. So it could happen by purchase here in the United States. Well, but remember, the first sale doctrine applies equally to domestic sales. So once somebody alienates the article, they've given up their right over it. The only confusion, and it was confused for a while, was whether or not that had applicability to articles brought in from abroad, either on the one-way or the two-way trip. But that's Bob's Merrill. It goes back all the way to that. If you sell the book, once you're the publisher, you can't control what the price at which other people sell it, because first sale cuts off your claim of infringement, and you can't resurrect it in creative ways, no matter how creative, in this case, the symbol on the back of the watch. And here, so it clears a lot of the underbrush out. I think we could spend a fair amount of time, which I don't have, to go through hypotheticals as to when it could come up again. I'm not saying it's gone for all time. But for the most part, it's not going to come up again, which makes affirmance on current saying grounds sensible for that reason as well. But with respect to the misuse issue, I don't think that there's any dispute in the record of any material fact as to what was going on here. And we don't agree that it's an objective test only. We agree it's, you can look at objective evidence, you can look at subjective evidence. It really doesn't matter. What's your goal? Well, your goal is to decide whether copyright is being advanced for something that violates the public policy for which the copyright has been granted. And here, the record is chock-a-block of both objective and subjective evidence. Let me just tick off some of this, because actually, Mr. Levy also pointed out, I can't remember whose question it was. I apologize. Does anyone buy the watch for the little symbol on the back? He said, I can't say. Well, the record tells us. Mr. Eamons, senior executive of Omega, said that while they had that watch in circulation with that tiny little symbol on the back, it did not enhance sales at all. And that's a two supplemental excerpts of record of page 84. That makes sense. Nobody knew it was there. They kept it secret. It wasn't only tiny. It wasn't only on the back of the watch. He used the word gotcha. I got to use the word gotcha. This was a gotcha by Omega, stamping some of these watches with the little symbol, not letting even their retailers know about it, set aside the public, and then suing Costco when it inadvertently sold some of those watches with that little symbol. That's a classic gotcha. That's inequitable, and that's misused. So you have all this objective evidence about the sneakiness, frankly, that went on in terms of the use of the symbol. Then you have what they label subjective evidence, but I think is absolutely perfect circumstantial evidence of an objective and violation of public policy. You've got admissions throughout the record that this lawsuit was not brought for any purpose related to the aesthetics of the globe design. It had nothing to do with it. When asked at his deposition, the senior most official for Omega, when asked if the sole, excuse me, the whole purpose, and that's the quote, the whole purpose of creating the design in the first place was to stop the sale of watches that they didn't want sold by Costco. This is two supplemental excerpt of record 170 and 171. What does he say? Yes, yes, yes, of course. And then there are other admissions in the record, not just in the testimony of the senior executives. Omega charges a lot of money for its watches. It has to keep good relationships with its retailers. That makes perfect sense. It issues a gray market update because these retailers want to know, what are you doing to keep our prices as high as possible? We've already paid you for these watches. We now want to make our profit. What are you doing to help us out? So they issue newsletters called gray market updates. Twice in 2009 in discussing this very lawsuit, how did they describe it? Nothing to do with the aesthetics of the symbol. According to them, the lawsuits were all about stopping the importation of these watches, which now after Kurt saying they can't do anymore, but back then it was an important issue. That's an objective piece of evidence as to why they brought this lawsuit and its misuse. I mean, the record's chock full of all of these statements. It's not, it's not disputed. So let me tell you what the one semi-dispute is. They make the argument, Mr. Levy make it and it's in their papers, that well, as long as we had purposes in addition to using the copyright this way, so-called anti-counterfeiting measures and prestige measures, that makes it all okay. That's absolutely positively wrong. The whole point of copyright misuse doctrine is that courts stay their hand while the misuse is in effect. It doesn't matter if you have other purposes. In fact, I think Your Honor asked the question about trademark law. It's relevant in this respect. They could sue under trademark law if a counterfeiter was reproducing this symbol, right? That was one of the reasons that nothing stops them from doing that. Our loss, our defense of copyright misuse doesn't prevent them from doing that. They also said it's a but we have the undisputed testimony that it didn't enhance sales and how could it be something that enhances the prestige of a watch when you don't even let the public know it's there? That's just inherently unreasonable. That's not a disputed fact. That's an after-the-fact argument. And so for all of these reasons, I think you should affirm the judgment below and you have two reasons in which to do it, Kurt's saying, and I do suggest that's a good way to go, or on misuse itself. And you indicated you didn't want to hear anything about attorney's fees, but let me just say you should affirm the award of attorney's fees because we did everything that the Supreme Court in Fogarty said you're supposed to do. An award of fees here advances the purposes of the Copyright Act. And in Fogarty, the Supreme Court said, look, it's important for defendants to advance meritorious defenses, for defendants to do so. We've been litigating this for eight years. We have to defend ourselves. We got a fraction of our overall fees. We prevailed. And the fee award, of course, is abusive discretion, and it's not abusive to conclude after all this litigation that we get some of our expenses back. So I would urge you to affirm the fee award as well. All right. Thank you. You're over your time. Thank you. I think we're all pretty familiar with Fogarty and the attorney's fee issue. I'd like to take this short time that I have left to just bring to the Court's attention. First, the intention of Congress expressed in the House report, the House report expresses that Congress intended that the language used in the Act sought to foreclose any attempts by courts to create artificial and unjustified distinctions for copyright protection, which would, quote, depend upon the form or medium in which the work is fixed. I think that goes to everything we've been talking about. You may not appreciate why that symbol was put on the back of the watch. Costco may not like it because it interferes with what they want to do in business, they say. But the fact that it was chosen to be put on that tangible object, Congress says, that's okay. You can't try to expand, you can't create artificial or other reasons to get around it. Would you address Kirsten and what we should do about that, please? Kirsten, if you would like additional briefing on it, we'd be happy to provide you with the additional briefing. I think Durant and Pine, which are cited in our letters, make it clear that that is a conclusive and binding determination between the parties. If you want briefing, we can provide briefing, for example, and I won't go into detail about it. For example, there's a Seventh Circuit case that's very much like our case, and it says that's the end of it. Curt Sang may apply to other litigants in other cases. It does not apply to these litigants in this case, and this is still a lie. So that's a procedural question. It's a procedural question whether it applies in this case, based on the history of how the issue was developed. Under United States Supreme Court precedent, it doesn't. You're saying it's the law, the law of the case has been determined between these parties. I'm saying that the determination by this court, its judgment in 2008, when it was affirmed by the Supreme Court. Resolved that issue. Becomes binding and conclusive between these parties in this case. So you're saying we can't even consider cursing at this point? And if the court would like full briefing on it, we'd be happy to provide it to the court. So that issue becomes irrelevant if we adopt the affirmative misuse determination that was made by the district court. That's an alternative basis in any event, right? Well, first of all, the first sale doctrine obviously was not at issue on this appeal. But we don't even have to get there. If we agree with the district court, the affirmative misuse defense was properly raised, then we don't even get to the cursing. And I know I don't have much time. I would like to just end that part of the discussion about misuse by pointing out to the court that in the Apple case, this court explains the development of the misuse defense and the defense was developed in the licensing cases. It was not intended to be these kind of cases where there's a first sale or whether or not there's a first sale. What happened is because of the effect of the first sale doctrine, copyright holders were entering into licensing agreements. And it was those agreements that didn't come under the first sale doctrine that the licensees then began to say, well, wait a minute. The copyright holder was using those licensing agreements to restrain competition, to restrain the use of other products. And when you look at Apple and Apple says the only case that this court has ever applied it in was the practice management case. And that is where there was a competition in the sense of competitive products. Here, Costco could sell the watches with the design after there was a lawful first sale. It could sell Seamaster watches, those that didn't have the copyrighted design on them. It could make its own watches. It may have other problems if it copied what the Omega watch or tended it to be an Omega watch, but it could have full freedom to do what it wishes to do. This is only about the copy that they purchased here. And it's Supreme Court says that we're not going to get involved. The courts are not to get involved in the integrity of a company's marketing processes and how they seek to market their goods. And here, this hadn't yet been marketed because it hadn't yet been placed on all of the watches, but it was going to be at some point. But it's not up to Costco and it's not up to the district court and it's not up to this court to tell a company how it should market its products and what is important in the marketing of its products and as to whether people will buy it or not buy it. People buy a lot of high-end goods because it has somebody's initial or some symbol on it that says this is quality, whether it can be seen by everybody or only the person who buys it. That's prestige goods. Thank you. Thank you very much, counsel. Omega versus Costco is submitted and this court will adjourn for today. Thank you. Thank you.
judges: Nelson, Wardlaw, Rawlinson